**Steven BENCICH, Ron Friedman, Plaintiffs,**

v.

**Yvette HOFFMAN, Guy Crawford, Dead Alive Productions, Inc., Ideal Media Marketing, Inc., Spectrum, Inc., Defendants.**

**No. Civ.A. 981139PHXEHCWGY.**

United States District Court, D. Arizona.

Feb. 11, 2000.

Edward Joseph Ribadeneira, Wahl & Ribadeneira, Scottsdale, AZ, Charles A. Goldwasser, Law Offices of Charles A. Goldwasser, Los Angeles, CA, for Plaintiffs.

Merrick Brian Firestone, Ronan & Firestone, PLC, Phoenix, AZ, for Defendants.

## MEMORANDUM AND ORDER

YOUNG, District Judge.[1]

After their collaborative relationship on a movie project soured, the plaintiffs Steven Bencich ("Bencich") and Ron Friedman ("Friedman") (collectively "the Screenwriters") brought suit against Yvette Hoffman ("Ms.Hoffman"), Dead Alive Productions, Inc., and Ideal Media Marketing, Inc. (collectively "Hoffman") for fraud and copyright infringement.[2] Hoffman denied both charges and now moves the Court to grant partial summary judgment with respect to the copyright claim.[3] Hoffman argues that because the product created by Ms. Hoffman, Bencich, and Friedman was a "joint work," she is also an owner of the screenplay and, as a result, she cannot infringe the copyright.

## I. FACTUAL BACKGROUND

Bencich and Friedman are writers and producers of film and television screenplays. See Verified Compl. ¶ 3. Ms. Hoffman is involved in the creation, development, and marketing of low-budget films and videos. See id. ¶ 4. On or about December 1, 1995, Ms. Hoffman gave Bencich a four-page treatment for a film to be

---

1. Of the District of Massachusetts, sitting by designation.

2. Two of the named defendants, Guy Crawford and Spectrum, Inc., were never served and do not have attorneys of record. Moreover, none of the documents submitted on this motion by either party addresses these two defendants. Thus, the case only lies against the remaining three defendants.

3. Hoffman also moved for partial summary judgment on the fraud claim and two related issues. The Court granted these motions from the bench on November 18, 1999.

entitled "The Fan," which was subsequently retitled "The Fanatic" and eventually produced under the name "The Catcher." *See id.* ¶ 12. During this meeting, the Screenwriters and Ms. Hoffman discussed whether the Screenwriters would be willing to write a screenplay from the treatment. *See id.* Friedman later testified that he understood that the deal was essentially, "Look, you guys draft a script, we will take a look at it. If it works, we will enter into some kind of agreement to produce it." *See* Friedman Dep. at 67–68. Bencich also testified as follows:

> Q. You devoted your full time to [the project], and you understood that, in order to be compensated, you had to produce a script that a movie could be shot from. Correct? You knew that was your end of the arrangement. You had to produce a script that she could shoot a movie from?
>
> A. That's correct.

Bencich Dep. at 212. Eleven days later, on December 12, 1995, the Screenwriters delivered to Ms. Hoffman a sixty-page screenplay, the document which forms the basis of the copyright infringement claim. *See* Verified Compl. ¶¶ 13, 14. In early March, 1996, Ms. Hoffman informed Bencich that the project to produce the film was on indefinite hold. *See id.* ¶ 17. In July, 1997, Bencich became aware that Ms. Hoffman had created a film entitled "The Fanatic," and on or about November 27, 1997, he obtained a Certificate of Registration for the screenplay from the Register of Copyrights. *See id.* ¶ 15. Bencich and Friedman now allege that the film infringes their copyright in the screenplay. *See* Verified Compl. ¶ 19.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate if, after reviewing the facts in the light most favorable to the nonmoving party, "the pleadings, depositions ... together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A "genuine" issue is one that "properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "material" fact is one that "might affect the outcome of the suit" under the applicable legal standard. *Id.* at 248, 106 S.Ct. 2505.

### B. The Copyright Claim

In her motion for partial summary judgment on the copyright claim, Hoffman asserts that because the screenplay was a "joint work," as that term is defined by the Copyright Act, she is also an owner of the screenplay and, as matter of law, she cannot infringe the copyright.

According to the Copyright Act, a "joint work" is "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. Furthermore, even a person whose contribution is relatively minor, if accorded joint authorship status, enjoys all the benefits of joint authorship. *See Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1068 (7th Cir. 1994); *Community for Creative Non–Violence v. Reid*, 846 F.2d 1485, 1498 (D.C.Cir.1988) (Ginsburg, J.) (*aff'd* 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989)); 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 6.08, at 6–28 (1997). The essence of joint authorship is a joint laboring in furtherance of a preconcerted common design. *See* 1 *Nimmer* § 6.03, at 6–6. Thus, in order to create joint authorship, each person must (1) intend to create a joint work and (2) contribute copyrightable material to the resulting work. *See Ashton–Tate Corp. v. Ross*, 916 F.2d 516, 522 (9th Cir.1990). Because Hoffman presents evidence with respect to both of these elements and the Screenwriters fail to meet the challenge, the Court holds, as matter of law, that the screenplay constitutes a joint work.

With respect to the parties' intent to create a joint work, the Screenwriters testified that they would be using Ms. Hoffman's treatment in order to create the screenplay. *See* Bencich Dep. at 134–35, 139; Friedman Dep. at 58–59, 83. Likewise, Bencich testified that he could not have written the screenplay without the treatment. *See* Bencich Dep. at 139. Furthermore, the Screenwriters used Ms. Hoffman's address on the draft, indicating their intention to share the work product. *See* Friedman Dep. at 90–91. Ms. Hoffman's intent, meanwhile, is easily inferred from her conduct as alleged by Bencich and Friedman. *See* Verified Compl. ¶ 12. When an author writes a treatment, she does so with the clear purpose to turn that treatment first into a screenplay and then into a movie. The fact that she later approached Bencich about creating a screenplay from her treatment further evidences her initial intent. *See id.* The fact that Ms. Hoffman may have written the treatment before knowing the particular individual or individuals who would write the screenplay is irrelevant. *See Philadelphia Orchestra Ass'n. v. Walt Disney Co.,* 821 F.Supp. 341, 347 (E.D.Pa.1993) ("The authors need not be temporally or physically proximate to create a joint work as long as each intended at the time he made his contribution that it would either augment, or be augmented by, a later or earlier contribution to form a unitary whole."). Thus, the Court rules that at the time Ms. Hoffman created the treatment, she did so with the intent to merge her treatment with the Screenwriter's contribution.

While Ms. Hoffman puts forth sufficient evidence to demonstrate that the parties intended to create a joint work, the Screenwriters fail to demonstrate a genuine issue of material fact concerning any failure of intent to merge. *See* Bencich Opp'n at 10–11. Without any citation to any part of the record, the Screenwriters merely offer that "[t]here is no evidence to suggest that at the time that they wrote their screenplay, they expected that Hoffman would contribute to the work." *Id.* at 11. Such a conclusory statement, particularly when unaccompanied by any citation to affidavit or deposition testimony, is insufficient to demonstrate a genuine issue of material fact. Thus, the Court rules that the parties intended that their contributions be merged into a joint work. *See Ashton–Tate,* 916 F.2d at 522.

As to the second requirement, that each contribution be separately copyrightable, Hoffman offers Bencich's testimony and the treatment itself to show that her treatment is separately copyrightable. *See* Bencich Dep. at 139, 141; Hoffman's Omnibus Statement of Facts Ex. K. Apparently misunderstanding the significance of Hoffman's argument, the Screenwriters concede the point and offer no evidence to refute it. *See* Bencich Opp'n at 8 (stating that whether the treatment is copyrightable is "not the issue in this case"). Thus, the Court concludes that the contributions are separately copyrightable.[4] Consequently, the parties are joint authors of the screenplay.

■ Of particular significance in this case, the authors of a joint work are co-owners of the copyright in the work. *See* 17 U.S.C. § 201(a). Co-owners of a copyright are generally treated as tenants in common, with each co-owner having an independent right to use or license the use of the work, subject to a duty of accounting to the other co-owners for any profits. *See Thomson v. Larson,* 147 F.3d 195, 199 (2d Cir.1998); *Ashton–Tate,* 916 F.2d at 522. Consequently, Ms. Hoffman, as tenant in common with each Screenwriter, had an independent right to use or license

---

4. The Screenwriters have not only alleged that the screenplay is copyrightable, Bencich has also received a Certificate of Registration from the Register of Copyrights on November 27, 1997. *See* Verified Compl. ¶¶ 14, 15. Because the certificate is *prima facie* evidence that the screenplay is copyrightable and neither party has offered evidence in contradiction of that determination, the Court holds that the Screenwriters' contribution is also copyrightable.

the use of the screenplay. At the same time, however, Ms. Hoffman is subject to an accounting to the individual Screenwriters for any profits earned as a result of the copyright's use. Nonetheless, pursuant to Hoffman's theory that the parties are joint authors of the screenplay, partial summary judgment as to the copyright claim is in order.

As this ruling disposes of the final issue between the parties, judgment shall enter for Ms. Hoffman and her related entities, Dead Alive Productions, Inc. and Ideal Media Marketing, Inc. The cases against Guy Crawford and Spectrum, Inc. are dismissed for lack of prosecution.

SO ORDERED.